# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

LAURICE ZINIS,

    Plaintiff,

*v*.                                       CASE NO. 08-CV-11087

COMMISSIONER OF            DISTRICT JUDGE SEAN F. COX
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 14.)

Plaintiff was 37 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 7 at 11, 41.) Plaintiff's relevant employment history includes work as a medical assistant, dietary assistant, electrician's assistant, hostess, and packer. (Tr. at 54.)

Plaintiff filed the instant claim on July 21, 2004, alleging that she became unable to work on July 28, 2004. (Tr. at 41.) The claim was denied initially and upon reconsideration. (Tr. at 30, 31-35.) In denying Plaintiff's claims, the Defendant Commissioner considered "disorders of back, discogenic & degenerative," as possible bases of disability. (*Id.*)

On November 3, 2006, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Alfred H. Varga, who considered the case *de novo*. In a decision dated February 22, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 11-22.) Plaintiff requested a review of this decision on April 9, 2007. (Tr. at 7.) The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 10, 2008, when the Appeals Council, after the review of additional exhibits[2] (Tr. at 445-

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the

51), denied Plaintiff's request for review. (Tr. at 4-6; AC-1 Letter from attorney Harvey Covensky, Tr. at 3.) On March 13, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509

---

Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

(6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice'

within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Comm'r*, 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that, after a slip and fall at work in March 2001 (Tr. at 74), Plaintiff was treated by Myron M. LaBan, M.D. Dr. LaBan treated Plaintiff from July 2003 through August 2004. (Tr. at 87-107.) In July 2004, Dr. LaBan summarized his treatment of Plaintiff by noting that she had severe recurrent right hip and leg pain and that he had performed "an extensive workup previously for a structural lesion in her back and to date none has been found." (Tr. at 90.) Dr. LaBan had prescribed steroid injections, Vicodin, and Flexeril for pain, as well as Ambien for depression. (*Id.*) An MRI of the lumbar spine performed on August 2, 2004, revealed a "[m]ild disc bulge seen at L4-5 and LS-S1 without evidence of canal stenosis" and "[m]ild degenerative disc disease seen at L4-5." (Tr. at 89.)

On August 6, 2004, Dr. LaBan noted that Plaintiff "has been through the gamut of injections, oral medications, physical therapy, and epidural steroids, all with unremitting pain." (Tr. at 88.) Dr. LaBan noted that "if indeed the bone scan which I ordered today is negative, we will have to refer her to a chronic pain program because we do not provided [sic] high-dose narcotics over an extended period of time for neuromuscular or musculoskeletal abnormalities, particularly when the diagnosis is up in the air." (*Id.*) On August 12, 2004, Dr. LaBan conducted a bone scan which, as Dr. LaBan had suspected, was "unremarkable" and "normal" and which "reveal[ed] no focal abnormality to suggest a pars defect or other osseous pathology." (Tr. at 87.)

Plaintiff was also treated by Dr. B. Ahlgren, M.D., from September of 2004 through February of 2006. (Tr. at 126-34.) Based on Plaintiff's "symptoms of unrelenting pain, and failed exhaustive attempts with conservative management for a three year period of time," Dr. Ahlgren offered and Plaintiff chose to have a "decompressive lumbar laminectomy L4-S1, with L4-S1

7

fusion with TSRH instrumentation, bone graft and allograft, and TLIF" on November 8, 2004. (Tr. at 127.) By December 2005, Dr. Ahlgren noted that radiographs "show adequate placement of her hardware and graft, no appreciable gross loosening" and "healing with her grafts." (Tr. at 127.) Dr. Ahlgren also noted that "her current restrictions are to avoid any repetitive bending." (Tr. at 127.)

At the request of Plaintiff's attorney, Lary R. Berkower, M.D., evaluated Plaintiff as "suffering from a major depressive disorder." (Tr. at 138.) Dr. Berkower stated that Plaintiff's "accident and injuries have had a devastating impact upon her emotionally and physically [and that] [h]er prognosis vocationally is deemed to be extremely unfavorable in view of her chronic, ingrained and highly somaticized psychiatric illness [such that] [s]he is not considered capable of functioning successfully at any job in the American economy, both now and in the foreseeable future." (Tr. at 139.)

A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician in August 2005 concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift up to ten pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and that Plaintiff's pushing and pulling abilities (including use of foot and hand controls) is unlimited. (Tr. at 78.) The assessment also concluded that Plaintiff is occasionally limited in the postural areas of climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. at 79), but that Plaintiff has no manipulative, visual, communicative, or environmental limitations. (Tr. at 80-81.) There was no treating or examining source statement regarding Plaintiff's physical capacities for the DDS physician to compare or contrast. (Tr. at 83.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 28, 2004, and that Plaintiff meets the insured status requirements through December 31, 2009. (Tr. at 13.) At step two, the ALJ found that Plaintiff's status post lumbar laminectomy and fusion, right piriformis syndrome with radiculopathy, and major depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14.) At step four, the ALJ found that Plaintiff could not perform her previous work as a phlebotomist, dietary aide, electrician's assistant or hostess. (Tr. at 20.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of unskilled sedentary jobs available such as station assembler, visual inspector, hand packager, and security monitor, in the national and regional economy, i.e., Southeast Michigan. (Tr. at 21.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work (Tr. at 21), and he thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 21.) Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking

9

and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ did not properly analyze the credibility of Plaintiff's subjective complaints of pain. (Dkt. 10 at 11-16.) Under the test set forth in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), "[f]irst the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at 853. If there is, Plaintiff is not required to establish objective evidence of the pain itself but the court will examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky,* 35 F.3d at 1038-39. The Regulations provide the following guidelines in evaluating whether the medically

determinable impairment could reasonably be expected to produce a Plaintiff's alleged symptoms such as pain:

> [T]he entire record of medical and nonmedical evidence will be considered in evaluating the intensity and persistence of those symptoms, including the following factors: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use of have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In the instant case, the ALJ expressly considered all of the above factors and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms to be "not entirely credible." (Tr. at 15-20.) I suggest that substantial evidence supports the ALJ's finding. Plaintiff indicated that every day she gets her son up and ready for school, cooks breakfast, drives her son to school, does laundry and dishes, bathes and dresses herself, makes lunch, feeds the fish, helps her son with homework, helps with dinner, does the dishes, and gets prepared for the next day. (Tr. at 62.) Plaintiff noted that although she feeds the fish, her husband cleans the fish tank. (Tr. at 63.) Plaintiff indicated she has no problem with daily personal care and that she prepares meals daily although she cannot bend or lift heavy items, such as a turkey, for baking. (Tr. at 63-64.) She also noted that although she can fold laundry and do dishes, she needs someone else to move the clothes and to put dishes away. (Tr. at 64.) Plaintiff further stated that she shops for groceries for 1-2 hours bi-weekly and that she is able to pay bills, handle a savings and checking account, and count change. (Tr. at 65.) Plaintiff also visits with others on the phone and e-mails her children. (Tr. at 66.) Plaintiff crochets and can ride a bicycle, but

11

experiences "pain from bouncing." (Tr. at 66.) Plaintiff can walk for 20-30 minutes before needing to stop and rest and, after resting for 5-10 minutes, can resume walking again for a total of 45-60 minutes. (Tr. at 67.) Plaintiff indicates that a cane and a brace were prescribed for her in 2004 and that she uses the "cane for walking-shopping" and the "brace everyday." (Tr. at 68.)

Plaintiff argues that the ALJ improperly "cherry-pick[ed] the evidence" of her daily activities, did not consider that she may only engage in these activities by enduring great pain, and should not have used these daily activities to discount her credibility. (Dkt. 10 at 14-15.) Plaintiff relies on *Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1967), wherein the Sixth Circuit held that if daily activities are "intermittent and not continuous, and [are] done in spite of the pain suffered," plaintiff's ability to do those activities does not mean plaintiff is not disabled where he "can engage in substantial activity only by enduring great pain." *Id.* at 586. Here, however, the ALJ did not find that these activities were intermittent but rather relied on Plaintiff's own descriptions of the activities she is able to perform each day which further supported a finding that she could perform some sedentary work with limitations. (Tr. at 21.) I thus suggest that substantial evidence supports this finding. *See Jones v. Comm'r of Social Security*, 23 Fed. App'x 339, 340 (6th Cir. 2001) (finding substantial evidence supported ALJ determination that daily activities of feeding chickens, mowing lawn, and fishing supported ability to engage in substantial gainful activity rather than intermittent abilities).

Plaintiff also contends that the ALJ failed to properly evaluate her mental impairments. (Dkt. 10 at 19-21.) Plaintiff contends that the ALJ improperly focused on the fact that she did not avail herself of mental health services despite having Medicaid, because the failure to seek help may itself be indicative of her mental illness. (Dkt. 10 at 20 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental

12

impairment for the exercise of poor judgment in seeking rehabilitation")). In *Blankenship*, after noting the claimant had not sought help, the ALJ did not apply the *Duncan* analysis regarding subjective complaints of pain. Here, as stated earlier, the ALJ expressly applied all of the factors in making his determination. I suggest that this isolated statement regarding Plaintiff's neglect in seeking mental health services that were available to her does not undercut the ALJ's overall findings.

Plaintiff contends that the ALJ rejected Dr. Berkower's uncontradicted conclusion without any other psychiatric evidence to support the ALJ's own subjective opinion. (Dkt. 10 at 21.) Dr. Berkower concluded that Plaintiff is "not considered capable of functioning successfully at any job in the American economy, both now and in the foreseeable future" due to her "somaticized psychiatric illness." (Tr. at 139.) *Blankenship, supra*, provides that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." 874 F.2d at 1121.

Defendant counters that the ALJ properly discounted the opinion of a physician who only examined Plaintiff once. I note that a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

Even more fundamentally, however, I suggest that the ALJ did not reject Dr. Berkower's diagnosis, which would be problematic under *Blankenship*, but rather found that the diagnosis did not support the grave conclusion that Plaintiff is so completely disabled she could not perform any work, even sedentary work with limitations. In other words, the ALJ embraced the diagnosis but made the credibility determination that Plaintiff's subjective description of her abilities, which Dr. Berkower relied upon in fashioning his conclusion, were not fully credible. Consequently, the ALJ accepted Dr. Berkower's psychiatric conclusions but did not follow Dr. Berkower's vocational conclusions. Since Dr. Berkower is not a vocational expert, I suggest the ALJ properly looked beyond his vocational conclusions.

The ALJ's acceptance of Dr. Berkower's diagnosis is also visible in the ALJ's inclusion of psychiatric limitations in the hypothetical posed to the VE wherein he required that the sedentary tasks be "very simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks as well as being relatively low in stress and having some limitations on the contact with the public, co-workers and with supervisors." (Tr. at 170.)

Plaintiff also argues that the ALJ failed to include a preclusion on bending in the hypothetical posed to the VE. (Dkt. 10 at 18-19.) Defendant counters that "by its very nature, sedentary work does not entail frequent bending," citing SSR 83-14. (Dkt. 14 at 12.) I note that Dr. Ahlgren did not state that Plaintiff could never bend, he stated that Plaintiff should "avoid any repetitive bending." (Tr. at 127.) I suggest Defendant is correct that sedentary work, by definition, does not involve repetitive bending. SSR 83-14, 1983 WL 31254, at *2 (S.S.A. 1983) (the two types of bending are stooping and crouching. "To perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular

job)"); SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983) ("By its very nature, work performed primarily in a seated position entails no significant stooping."). I also note that the jobs suggested by the VE in the instant case – visual inspector, hand packager, and station assembler – would generally require very little, if any, bending.

Finally, Plaintiff argues that the VE's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT") because there is no "station assembler" or "visual assembler" jobs listed in the DOT. (Dkt. 10 at 22.) In the instant case, the ALJ asked the VE whether these jobs were consistent with the DOT and the VE responded that they were but "the DOT is silent on the sit/stand option. That's based on my own experience." (Tr. at 170-71.) The ALJ further inquired whether he had "observed these jobs with a sit/stand option and these other non-exertional limitations and you've place[d] people in there?" to which the VE responded affirmatively. (Tr. at 171.)

I suggest that the ALJ did all he was required to do under SSR 00-4p, which is used "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT." I suggest that here there is no conflict because the DOT is silent, and I further suggest that any perceived inconsistency would have been resolved by the ALJ's inclusion of limitations specific to Plaintiff in the hypothetical posed to the VE and by the VE's own testimony regarding his experience and observations of the jobs suggested. *See Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (where question posed to VE accurately reflected plaintiff's limitations, plaintiff's contention that ALJ erred in failing to inquire into possible conflicts was without merit).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. As indicated above, I suggest that substantial evidence supports the ALJ's credibility determination and therefore, also find that substantial evidence supports the hypothetical provided to the VE.

I thus suggest that the ALJ's findings follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians, as well as the daily activities described by Plaintiff herself.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ *Charles E. Binder*
                                                 CHARLES E. BINDER
Dated: September 15, 2008                     United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Frederick J. Daley, Jr., Marcie E. Goldbloom, Judith E. Levy, and the Commissioner of Social Security, and served on U.S. District Judge Cox in the traditional manner.

Date: September 15, 2008           By     s/Patricia T. Morris
                                             Law Clerk to Magistrate Judge Binder